**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DORA AND ALFRED VILLODAS,

     Plaintiffs,

v.

                         CASE NO.:

SANTANDER CONSUMER USA, INC.,

     Defendant.

_____/

## **COMPLAINT**

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today. In April of 2020, Americans were bombarded with 2.9 billion Robocalls.  That is an average of 95.4 million robocalls per day.[1]

2.     The people complaining about harassing robocalls is increasing at an alarming rate.

3.     Santander Consumer USA, Inc. robocalled the Plaintiffs approximately 450 times.

4.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

---

[1] http://robocallindex.com

5.      Plaintiffs, Dora and Alfred Villodas, allege Defendant, Santander Consumer USA, Inc., robocalled them more than 450 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") and  Invasion of Privacy ("IOP").

6.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.      The TCPA was enacted to prevent companies like Santander Consumer USA, Inc. from invading American citizens' privacy and prevent illegal robocalls.

8.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.      According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10.     This private cause of action is a straightforward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy.  *Krakauer v. Dish Network, L.L.C.* No. 18-1518, 2019 WL 2292196 at *2 (4th Cir. May 30, 2019).

## JURISDICTION AND VENUE

11.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12.     Violations described in the Complaint occurred while Plaintiffs were in Cutler Bay, Florida.

## FACTUAL ALLEGATIONS

13.     Plaintiffs are natural persons and citizens of the State of Florida, residing in Cutler Bay, Florida.

14.     Plaintiffs are "consumers" as defined in Florida Statute § 559.55(8).

15.     Plaintiffs are "alleged debtors."

16.     Plaintiffs are the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17.     Defendant is a Foreign Profit Corporation with its principal place of business in Dallas, Texas, and conducts business in the State of Florida.

18.     Defendant is a "debt collector" as defined by Florida Statute § 559.55(7).

19.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

20.     Plaintiffs are the regular users and carriers of the cellular telephone numbers at issue, (786) 443-5797 and (786) 316-6164 and home telephone number at issue, (786) 345-8015.

21.     Plaintiffs were the "called parties" during each phone call subject to this lawsuit.

22.     Defendant intentionally harassed and abused Plaintiffs on numerous occasions by calling several times during one day.

23.     Defendant called several days in a row, with such frequency as can reasonably be expected to harass and bully Plaintiffs.

24.     When Plaintiffs answered their telephone they would hear a pause, and then a recorded voice would ask them to hold to be connected to a live agent.

25.     Plaintiffs experienced harrassing and degrading comments from the agents contacting them.  One particular agent was intrusive and condescending regarding Ms. Villodas' employment status.

26.     "Express consent" is narrowly construed by the Courts.

27.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

28.     Defendant was put on notice Plaintiffs did not want the Defendant contacting them.

29.     Defendant was told repeatedly that Plaintiffs did not want further phone calls.[2]

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

30.     Plaintiffs expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiffs' cellular telephone number and home telephone number by the use of an ATDS or a pre-recorded or artificial voice.

31.     Defendant attempted to collect a debt from the Plaintiffs by this campaign of telephone calls.

32.     Defendant made at least one call to (786) 443-5797.

33.     Defendnat made at least one call to (786) 316-6164.

34.     Defendant made at least one call to (786) 345-8015.

35.     Defendant made at least one call to Plaintiffs using an ATDS.

36.     Defendant made at least four hundred fifty (450) calls to the Plaintiffs.

37.     Each call the Defendant made to the Plaintiffs was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

38.     The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

39.     Plaintiffs repeatedly requested the Defendant to stop calling their cell phone and home phone, however, the Defendant continued to make calls.

40.     Plaintiffs' conversations with the Defendant putting them on notice that they did not want more phone calls were ignored.

41.     Defendant has recorded at least one conversation with the Plaintiffs.

42.     Defendant has recorded numerous conversations with the Plaintiffs.

43.     Defendant has made approximately four hundred fifty (450) calls to Plaintiffs' aforementioned cellular telephone numbers and home phone number in the last four years which will be established exactly once Defendant turns over their dialer records.

44.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

45.     Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

46.     By effectuating these unlawful phone calls, Defendants have caused Plaintiffs the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

47.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiffs' rights and interests in their cellular telephones and cellular telephone lines, by intruding upon Plaintiffs' seclusion.

48.     There was no legitimate purpose for the ongoing harassing phone calls once Plaintiffs explained their delay in payment and all other options were explained.

49.     Defendant's phone calls harmed Plaintiffs by wasting their time.

50.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiffs by depleting the battery life on their cellular telephones, and by using minutes allocated to Plaintiffs by their cellular telephone service provider.

51.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiffs, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

52.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

53.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in Federal Court 66 times since 2016 (See PACER May 2020).

54.     In the last 3 years, the Defendant has had 1,987 complaints reported to the Better Business Bureau (BBB), of which 1,030 of those complaints are classified as being related to "Billing/Collection Issues."(Per bbb.org May 2020)

55.      Plaintiffs expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiffs' aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

56.     Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

57.     None of Defendant's telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

58.     Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

59.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
**(Violation of the TCPA)**

60.     Plaintiffs incorporates Paragraphs one (1) through fifty nine (59).

61.     Defendant willfully violated the TCPA with respect to the Plaintiffs each time they called the Plaintiffs after they revoked their consent to be called by them using an ATDS or pre-recorded voice.

62.     Defendant knowingly violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialed calls made to Plaintiffs' cellular telephone after Plaintiffs revoked their consent to be called by them using an ATDS or pre-recorded voice.

63.     Defendant, Santander Consumer USA, Inc. repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiffs using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

64.     As a result of Defendant's illegal conduct, Plaintiffs suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

65.     Plaintiffs are also entitled to, and do, seek injunctive relief prohibiting Defendant, Santander Consumer USA, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT II**</u>
**(Violation of the FCCPA)**

66.     Plaintiffs incorporates Paragraphs one (1) through fifty nine (59).

67.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

68.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of their family with such frequency as can reasonably be expected to harass the debtor or their family.

69.     Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of their family.

70.     Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

71.     Defendant's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT III
### (Invasion of Privacy – Intrusion Upon Seclusion)

72.     Plaintiffs incorporates Paragraphs one (1) through fifty nine (59).

73.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiffs' privacy.

74.     All of the calls made to Plaintiffs' cell phone and home phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

75.     Defendant's persistent autodialed calls to their cellular phones and home telephone eliminated Plaintiffs' right to be left alone.

76.     Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiffs' sleep, disrupted Plaintiffs during mealtimes, and continually frustrated and annoyed Plaintiffs.

77.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiffs would have otherwise had in Plaintiffs' home and anywhere else Plaintiff went with her cellular phone.

78.     By calling both their home phone and  cellular phone, Plaintiffs had no escape from these collection calls either in their home or when she left the home.

79.     By persistently autodialing Plaintiffs' cellular phone and home phone without prior express consent, Defendant invaded Plaintiffs' right to privacy, as legally protected by the TCPA, and caused Plaintiffs to suffer concrete and particularized harm.

80.     Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiffs to their cellular telephone and home telephone after requests to stop is highly offensive to a reasonable person.

10

81.     Defendant intentionally intruded upon Plaintiffs' solitude and seclusion.

82.     As a result of Defendant's action or inaction, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

Heather H. Jones, Esq.
Heather H. Jones, Esq.
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
The Consumer Protection Firm, PLLC
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*

11